UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

STEPHEN CHRISTOPHER BROWN,

Plaintiff,

v. Case No.

ELIZABETH CLARK TARBERT, in her official capacity
as Division Director of Lawyer Regulation,
The Florida Bar,

Defendant.

_______________________________________/

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

Plaintiff Stephen Christopher Brown, pro se, sues Defendant Elizabeth Clark Tarbert in her official capacity as Division Director of Lawyer Regulation, The Florida Bar, and alleges as follows:

**PRELIMINARY STATEMENT**

This case concerns an arm of the state judiciary deploying its regulatory power over lawyers not to protect the public, but to protect the judiciary itself from criticism — suppressing, through fear, the most sacred form of speech in the American tradition: speech against government power. As an institution of the state judiciary, the Bar's conduct demonstrates that its operative interest is in the self-preservation of the current occupants of the branch that it serves.

The courts have historically granted state bars some leeway to regulate commercial speech and protect the public from the stereotypical legal shyster. This case demonstrates the worst outcome of that leeway: reasonable allowances for commercial-speech regulation have metastasized into a censorial power over core political expression. Within merely two election cycles of the Florida Supreme Court's 2021 adoption of a special preference for judicial referrals, that mechanism had been so visibly turned by incumbent judges against their electoral challengers that the Bar itself was left with no choice but to petition its own supervising court to repeal the preference for election-related grievances. The chilling effect of that era — and of the Bar's continuing enforcement practices — is what keeps Plaintiff's speech suppressed today, during the precise weeks when Florida voters are receiving their ballots.

**JURISDICTION AND VENUE**

1. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the First Amendment to the United States Constitution.
2. This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201-2202 and injunctive relief under Fed. R. Civ. P. 65.
3. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in Orange County, Florida, within the Orlando Division of the Middle District of Florida — including

Plaintiff's judicial campaign, the underlying Bar proceedings arising from it, and the suppression of Plaintiff's speech. The Florida Bar, of which Defendant is an official, also maintains a branch office at 1000 Legion Place, Suite 1625, Orlando, Florida 32801, within this District and Division.

**PARTIES**

4. Plaintiff Stephen Christopher Brown is a natural person, a resident of Florida, and a member in good standing of The Florida Bar admitted to practice in 2007.

5. Defendant Elizabeth Clark Tarbert is the Division Director of Lawyer Regulation for The Florida Bar, an official arm of the Supreme Court of Florida. Tarbert is sued in her official capacity.

**FACTUAL BACKGROUND**

**A. Plaintiff's Protected Political Speech — The Songs**

6. Plaintiff has composed multiple satirical songs concerning judicial candidates, judicial elections, judicial conduct, courtroom professionalism, and evidence law. These songs deliberately span a wide range of musical genres, a creative choice intended to appeal to the broadest possible cross-section of the electorate and maximize the reach of Plaintiff's message, and are intended for public release on social media and other platforms.

7. Every element of the songs is either a factual statement, protected opinion, parody, or entertainment, drawing on: (a) public information regarding judicial candidates' fitness for office; (b) established case law on judicial campaign speech protections (Republican Party of Minnesota v. White, 536 U.S. 765 (2002)); (c) well-documented examples of public figures' campaign conduct; (d) Plaintiff's own observations as a judicial candidate; (e) Plaintiff's professional expertise as an attorney regarding evidence law and courtroom procedures; and (f) recognizable comedic and satirical devices whose fictional character is apparent to any reasonable listener.
8. Exhibit A, titled "The Answer Is More," is a song that critiques the Bar's practice of prohibiting and/or punishing lawyers who speak about judges who are up for election, by contrasting that practice with more permissive speech environments in other jurisdictions. The song is core political speech directly relevant to the August 2026 judicial elections.
9. Exhibit B, titled "Hearsay (Words are Important)," is a comedic song about evidence law, hearsay rules, and attorney and judicial competence in applying the Federal Rules of Evidence. It comments on courtroom practice and judicial conduct. It is an expression of Plaintiff's real experience practicing in state courts for nearly 19 years with obvious comedic and satirical evidence.

10. Exhibit C, titled "No Quorum for Decorum in the Forum," is a song about courtroom professionalism, decorum, and the importance of following procedural rules. It comments on judicial and attorney conduct in formal proceedings.

11. All three songs draw directly on Plaintiff's nearly nineteen years of firsthand experience practicing law in Florida courtrooms. They are autobiographical creative expression grounded in Plaintiff's own professional observations, not abstract or generic commentary, offered as constructive critique of the State's judiciary and attorneys and are entitled to full First Amendment protection on that basis.

12. All three songs are core political speech or professional commentary protected by the First Amendment. They comment on public figures, judicial conduct, the rules governing political participation by attorneys, and matters of public concern. Each song consists of factual statements, opinion, parody, or entertainment — categories a voter of average intelligence can readily discern for himself or herself, without the assistance of Defendant or The Florida Bar, acting as an agent of the Florida Supreme Court, serving as gatekeeper of what the electorate may hear. The First Amendment "directs us to be especially skeptical of regulations that seek to keep people in the dark for what the government perceives to be their own good." 44

Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 503 (1996) (plurality opinion).

**B. The Bar's Pattern of Prosecuting Campaign-Related and Creative Speech**

13. Plaintiff is currently the respondent in Bar File No. 2025-30,068(9B), initiated by Plaintiff's opponent in the 2024 Ninth Judicial Circuit election (Judge Craig A. McCarthy). That referral alleged that Plaintiff's campaign social media posts and website content violated Bar Rules 4-8.2 and 4-8.4.

14. The timing of Bar actions has been retaliatory: Plaintiff announced his candidacy June 1, 2023. McCarthy and Mrs. McCarthy first recruited a member of the bar, Michele Bernard to file various frivolous complaints against the Plaintiff for First Amendment protected speech in June 2024 (alleging Comic Book was unethical, inflatable mascot was unethical, analogy of skeptical pilot was unethical, reading McCarthy’s own words was unethical, opining on McCarthy’s own words regarding Lawrence v. Texas was unethical, accurately accounting for the fewer-than-three years McCarthy spent in the Army was unethical, and posting a photograph of United States military members escorting Black children into an elementary school, captioned “True American Heroes” — a post on Plaintiff’s Facebook page that made no reference to any election or candidate whatsoever — was unethical, among others). On February 26, 2025, Bar Counsel Ashley

Morrison conducted a deposition at which Morrison posed questions about Plaintiff's future political plans — questions bearing no relation to any disciplinary purpose. Bar counsel also extensively questioned Plaintiff about the above-referenced clearly protected speech. After fourteen months of silence, the Bar issued a notice of grievance committee review on April 17, 2026 — the Friday before the judicial qualifying week in which Plaintiff would have had to qualify in order to run again. As of this filing it is apparent that the Bar continues to proceed on these fundamentally protected instances of speech, which has and will continue to irreparably harm Plaintiff.

15. Additionally, as briefly referenced above, Plaintiff created comic books, which are subjects of pending Bar complaints that staff should have dismissed but have not, demonstrating selective enforcement based on Plaintiff's identity as a judicial candidate and his exercise of protected creative speech. Exhibit D contains samples of Plaintiff's comic book work, suppressed for over 26 months due to pending complaints.

16. Plaintiff inquired of Bar Counsel whether he could use his creative merchandise (inflatable character based on his comic book work) for his personal home Christmas display. Bar Counsel neither authorized nor explicitly denied the use, leaving Plaintiff unable to utilize his own creative

work product due to reasonable fear of additional unlawful actions by the Bar, which Plaintiff did and continues to view as unbearable and dangerous to the wellbeing of Plaintiff and others.

17. This pattern — selective prosecution of campaign speech, selective enforcement of complaints about creative work, and retaliatory timing — creates a substantial chilling effect on protected First Amendment activity.

**C. The Chilling Effect and the Actual Suppression of Plaintiff's Speech**

18. Due to the Bar's demonstrated pattern of prosecuting campaign-related speech and selectively enforcing complaints about creative clearly-protected work, Plaintiff has refrained from releasing any of his songs or additional creative works despite their direct relevance to the August 2026 judicial elections and his professional expertise.

19. Plaintiff created these songs recently, specifically inspired by and in anticipation of the upcoming August 2026 judicial elections, but has been unable to release them. Consistent with statements Plaintiff made throughout his own 2024 judicial campaign — in which Plaintiff repeatedly emphasized that his priority was not his own electoral victory but ensuring that voters understood what they were voting for — Plaintiff created these songs to help inform the public and address the substantial confusion surrounding judicial elections and judicial conduct. The song in Exhibit A is directly relevant to

the 2026 judicial races, commenting on candidates' fitness and the Bar's rules governing judicial campaign speech. Plaintiff's conviction on this point is grounded in direct experience: while campaigning, when voters asked Plaintiff substantive questions that the Bar's enforcement practices made him afraid to answer, Plaintiff watched their reactions in real time — they did not perceive his silence as ethical compliance, but as evasion. The rule's operation thus produces the precise appearance of dishonesty that the Bar claims its speech restrictions exist to prevent, while rewarding whichever candidate is least careful about compliance and protecting incumbent judges, members of the judiciary headed by the Supreme Court, of which the Bar is an agency designed to serve it.

20. Plaintiff fears that publishing any of his songs will trigger additional Bar complaints and aggressive prosecution by Division Director Tarbert and Bar staff, similar to the treatment of his 2024 campaign speech and the ongoing suppression of his comic book work. The Bar's conduct in File 2025-30,068(9B) — including irrelevant deposition questions and retaliatory timing — provides concrete evidence that Plaintiff's fears are reasonable and well-founded., as does the fact that after more than two years the bar is continuing to punish the Plaintiff for such fundamentally protected speech as

reading an opposing party's own words from that party's book that the opposing party featured in his first known public campaign speech.

21. As a result, Plaintiff's protected political and creative speech has been suppressed. The songs remain unpublished, unable to inform the voting public during the critical period before the August 2026 judicial elections. Voting in the August 18, 2026 election is already beginning: under Fla. Stat. § 101.62(4)(a), ballots for overseas and military voters were required to be mailed no later than 45 days before the election, and domestic vote-by-mail ballots are expected to be delivered in Orange County just two days after this filing.

22. This constitutes an unconstitutional chilling effect on Plaintiff's First Amendment rights. See NAACP v. Alabama, 357 U.S. 449 (1958) (recognizing chilling effect as cognizable First Amendment injury).

**D. Irreparable Harm Without Immediate Relief**

23. Elections for judicial office in Florida are scheduled for August 18, 2026 — fewer than six weeks away. Overseas and military ballots have already been mailed, domestic vote-by-mail ballots are being mailed imminently, and early voting begins August 3, 2026. Plaintiff has only days in which to release his protected political speech before voters begin casting ballots.

24. The songs are directly relevant to those elections and to voters' informed decision-making about judicial candidates. Defendants may contend that no rule facially prohibits attorneys from discussing sitting judges, since the applicable professionalism rules by their terms reach only false statements or statements made with reckless disregard for their truth or falsity. In practice, however, the Bar's enforcement pattern — as evidenced by File No. 2025-30,068(9B) and Bar Counsel's own conduct described therein — recasts true, non-actionable campaign statements as violations of open-ended "professionalism" standards whenever the Bar cannot establish falsity, rather than confining enforcement to the rule's actual textual limits. This practice creates widespread and substantial confusion among practicing attorneys as to what campaign-related speech is and is not permitted, a confusion so pronounced that Bar Counsel itself has been unable to consistently articulate the rule's boundaries in Plaintiff's own proceedings. This arbitrary and unpredictable enforcement pattern chills protected speech independent of the rule's facial text, and the vagueness of the Bar's actual enforcement standard is itself constitutionally significant. This arbitrary and unpredictable enforcement is the precise defect the void-for-vagueness doctrine condemns: a standard is void where it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden" and where it "encourages

arbitrary and erratic" enforcement. Papachristou v. City of Jacksonville, 405 U.S. 156, 162 (1972) (citations omitted).

25. If the Court does not grant a Temporary Restraining Order and Preliminary Injunction preventing the Bar from prosecuting Plaintiff for releasing and promoting his songs, the election period will pass and the songs' political message will become moot and temporally irrelevant. Elections cannot be held again; the moment will be irretrievably lost.

26. Plaintiff has already lost the opportunity to run in this election due to the Bar's, at best, lack of diligence in, at least, culling the clearly unlawful allegations for greater than two years and its timing of inexplicably accelerating the grievance processes less than one business day before qualifying week.

27. Irreparable harm will result: Plaintiff will have been silenced during the critical window when the speech would have maximum political impact, and voters will be denied information relevant to their electoral choices.

28. Monetary damages cannot remedy this harm — the value of political speech lies not in compensation after the fact but in its timely dissemination before the election occurs.

## CAUSES OF ACTION

## COUNT I

## First Amendment

## Declaratory Judgment

29. Plaintiff incorporates Paragraphs 1-28 as if fully set forth herein.

30. The Bar's demonstrated pattern of prosecuting campaign-related speech and selectively enforcing complaints about creative work, as evidenced by File 2025-30,068(9B) and others and the ongoing suppression of Plaintiff's comic books, chills Plaintiff's exercise of protected First Amendment rights.

31. Even the Bar's counsel cannot articulate a legitimate compelling interest nor in good faith express to this Court that the catch-all umbrella should-be-void-for-vagueness standard of "professionalism" constitutes a "narrowly tailored" regulation of speech cognizable by the Constitution as written or as applied here and in other "investigations" of incumbent-challenging judicial candidates in recent years.

32. An actual, justiciable controversy exists: Plaintiff seeks to publish protected political and creative speech; the Bar has shown a pattern of prosecuting such speech; and Plaintiff reasonably fears prosecution if he releases his songs and other creative works.

33. A declaratory judgment that Plaintiff's release and promotion of his songs and creative works protected speech, which the Florida Bar has no legitimate business suppressing and that the Bar may not prosecute Plaintiff based on

the content of his protected speech, would resolve this controversy and provide necessary relief.

34. Plaintiff is entitled to a declaration that his songs constitute protected political and creative speech under the First Amendment and may not be the basis for Bar discipline.

**COUNT II**

**First Amendment**

**Temporary, Preliminary, and Permanent Injunctive Relief**

35. Plaintiff incorporates Paragraphs 1-34 as if fully set forth herein.

36. Plaintiff is likely to succeed on the merits: the songs are core political speech and creative expression protected by the First Amendment, and the Bar's demonstrated pattern of prosecuting such speech constitutes an unconstitutional chilling effect.

37. Plaintiff will suffer irreparable harm absent immediate injunctive relief: the August 18, 2026 election is imminent, but more importantly, mail ballots for that election are arriving imminently, within less than a week, meaning the practical window for the songs to reach and inform voters before they cast their ballots is even narrower than the general election date alone suggests. If that window closes, the songs' political impact and relevance will be destroyed forever, and monetary damages cannot remedy the loss of the

opportunity to influence voters during the period when they are actually voting.

38. The balance of equities favors Plaintiff: Plaintiff's interest in speaking on matters of public concern about judicial elections vastly outweighs any interest the Bar has in suppressing the speech.

39. An injunction is in the public interest: voters have a compelling interest in hearing all relevant information about judicial candidates before casting their votes, and the First Amendment protects that interest.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

(a) Grant Plaintiff's Motion for a Temporary Restraining Order;

(b) Grant Plaintiff's Motion for a Preliminary Injunction;

(c) Declare that Plaintiff's songs and creative works constitute protected political and creative speech under the First Amendment;

(d) Declare that the Bar may not initiate or pursue any disciplinary complaint against Plaintiff based on his songs and creative works;

(e) Enjoin Defendant Tarbert and the Bar from initiating, pursuing, or threatening to pursue any disciplinary action against Plaintiff based on his protected speech;

(f) Award Plaintiff his attorney's fees and costs; and

(g) Grant such other and further relief as the Court deems just and proper.

Dated: July 9, 2026

Respectfully submitted,

/s/ Stephen Christopher Brown
Stephen Christopher Brown, Pro Se
2212 S Chickasaw Trail, Unit #2468
Orlando, FL 32825
Email: stephen@brownandrice.com
Florida Bar No. 43406