# The Volokh Conspiracy

Mostly law professors | Sometimes contrarian | Often libertarian | Always independent



FREE SPEECH

## No Pseudonymity for Autistic Ex-Judge-Candidate, Alleging Failure to Accommodate Disability in Bar Investigation

EUGENE VOLOKH | 8.10.2026 10:33 AM

From a decision last Tuesday in *Doe v. Florida Bar* by Magistrate Judge Robert Norway (M.D. Fla.):

> Plaintiff argues that because this lawsuit challenges the actions of an "official arm of the Supreme Court of Florida," Plaintiff should be allowed to proceed under a pseudonym. Plaintiff further argues that he should be permitted to utilize a pseudonym because his medical and psychological information would be disclosed publicly, and his personal safety would be at risk….

For more details, here's an excerpt from Doe's argument for pseudonymity:

> This is a civil rights action against The Florida Bar and its officials, and against a sworn law enforcement deputy individually, arising in part from a disability accommodation request and denial, and in part from facts surrounding a domestic incident in which Plaintiff sought police assistance regarding a former intimate partner. Both categories of fact involve information the Eleventh Circuit has recognized as warranting protection through pseudonymous litigation….
>
> Plaintiff's claim under Title II of the Americans with Disabilities Act, Count IV, necessarily requires alleging that Plaintiff has autism, together with the medical and personal circumstances underlying Plaintiff's accommodation request. Courts have consistently recognized medical and psychological information as information of the utmost intimacy supporting pseudonymity….
>
> Plaintiff anticipates that Defendants may argue that Plaintiff waived any privacy interest in this information because Plaintiff voluntarily referenced his autism in a campaign social media post explaining his candidacy. That argument should be rejected. Disclosure in one limited context does not waive a privacy interest against disclosure in a different context to a different audience for a different purpose. *See Doe v. Shawnee State Univ.* (S.D. Ohio 2019) (rejecting argument that a transgender plaintiff could not claim a privacy interest in her transgender status because she had already disclosed it to her employer and coworkers, since the general public remained unaware).

> The campaign post was Plaintiff's own characterization, on his own terms, offered to explain his candidacy. What this litigation would create is materially different: a permanent, searchable public record in which Plaintiff's name is tied to a disciplinary prosecution premised in part on treating that same disclosure as actionable conduct—precisely the kind of damaging, decontextualized characterization the original disclosure neither caused nor invited.
>
> The factual background of a allegations directly related to Plaintiffs status as a domestic abuse survivor as an adult and child necessarily discloses that Plaintiff sought law enforcement assistance in connection with a former intimate partner and Plaintiffs First Amendment protected speech during that episode. Public docketing of these facts under Plaintiff's true name would disclose the existence and details of that relationship and the circumstances of Plaintiff's call for police assistance to the public at large, including to the former partner, creating a risk of harm independent of the litigation itself….

The court was unpersuaded:

> Plaintiff's interest in privacy does not outweigh the presumption of openness at this stage of the litigation. The nature of this case {*see Civil Rights Corps v. LaSalle* (2d Cir. 2026) (discussing public attorney disciplinary proceedings and explaining that it has been matters of public concern since the 1200s)} and the facts alleged do not compel any private information or put Plaintiff's safety at personal risk. The mere fact that Plaintiff may have to disclose information to the Defendants during discovery in this matter is not a sufficient basis to allow Plaintiff to proceed under a pseudonym in this litigation….

Doe stated in filings that he had run for judge of Florida's Ninth Judicial Circuit in the 2024 election cycle, and had autism; Stephen Brown ran in that election, and publicly stated that he "live[s] on the Autism spectrum." He got 48.7% of the vote in the nonpartisan primary, running against the incumbent.

Doe also says he "did not qualify to run again in the 2026 judicial election," partly because of the bar actions related to what he is suing over. This suggests that he might run again in the future, which further highlights the importance of the public being able to connect the lawsuit to the candidate, so as to better evaluate the candidate's qualities.

I e-mailed Mr. Brown, and he promptly responded, confirming that he was indeed Doe, and adding:

Advertisement

AD

> Just a very brief point of clarification: I firmly support open access to court records with the limited exception, in my case, of the basis of my ADA claim, which was (expectedly but not voluntarily) drawn to light against my will by actors who are not parties to these causes. I trust that you will handle the ADA with care.
>
> Regarding the issues germane to your journalistic interests, I have been personally conflicted since requesting pseudonym status and have several times thought about withdrawing the request. I think all the other issues I have presented should be resolved fully in sight of the governed. My positions on the First Amendment and Open Courts are clearly and precisely (and repetitively) contained within the Court pleadings, to which I have sworn.

For more on Doe's arguments about the alleged failure to accommodate, see his TRO motion. For still more, see Doe's 268-page, 870-paragraph Amended Complaint.

***NEXT:*** **"A Tale of Two Chiefs"**

**EUGENE VOLOKH** is the Thomas M. Siebel Senior Fellow at the Hoover Institution at Stanford, and the Gary T. Schwartz Distinguished Professor of Law Emeritus and Distinguished Research Professor at UCLA School of Law. Naturally, his posts here (like the opinions of the other bloggers) are his own, and not endorsed by any institution. He is also the co-host of the *Free Speech Unmuted* podcast.

FREE SPEECH RIGHT OF ACCESS DISABILITY LAW

Add Reason to Google MEDIA CONTACT & REPRINT REQUESTS

Show Comments (3)

## RECOMMENDED

North Carolina court bars woman from sharing video of cop shooting her dogs

J.D. Vance accidentally comes out as a socialist

New York is fining Amish schools over vaccines, so the Amish are asking SCOTUS for help

Minnesota parents were censored for saying school employees' job titles

Why anti-government rebel Ammon Bundy turned against MAGA

About

Browse Topics

Events

Staff

Jobs

Donate

Advertise

Subscribe

Contact

Media

Amazon

Add Reason to Google

© 2026 Reason Foundation | Accessibility | Privacy Policy | Terms Of Use

This site is protected by reCAPTCHA and the Google **Privacy Policy** and **Terms of Service** apply.

# The Volokh Conspiracy

Mostly law professors | Sometimes contrarian | Often libertarian | Always independent



FREE SPEECH

## "In Its 870 Paragraphs, 269 Pages, and 63 Causes of Action," the Complaint

"~~is just too damned long~~"—no, actually, it "includes the kind of extraordinary level of extraneous detail that necessitates repleader."

EUGENE VOLOKH | 8.11.2026 4:17 PM

From *Brown v. Florida Bar*, decided today by Judge Anne Leigh Gaylord Moe (M.D. Fla.) (the case I posted about yesterday, see No Pseudonymity for Autistic Ex-Judge-Candidate, Alleging Failure to Accommodate Disability in Bar Investigation):

> During his unsuccessful campaign to be elected as a Circuit Judge in the State of Florida, Mr. Brown alleges that he engaged in "protected political speech, including statements on social media and on his campaign website" about his opponent, a sitting Circuit Judge. His conduct and statements during and after the judicial election resulted in seven complaints being filed with the Florida Bar. The complaints against Mr. Brown alleged various violations of rules that govern judicial elections in Florida…. Among other things, the bar complaints alleged that Mr. Brown (1) made disparaging statements on social media about the sitting judge he ran against; (2) made inappropriate comments about another attorney's paralegal during a court proceeding; (3) alleged that some unnamed person requested a "discreet meeting" (which Mr. Brown alleges is a meeting arranged through a dating site "for purposes other than dating") with the sitting judge he ran against; (4) "sent emails to opposing counsel that were unprofessional and disparaging"; (5) engaged in improper conduct at a deposition; (6) stared at a complainant during a public campaign event; (7) made statements about the wife of the sitting judge he ran against; (8) publicly announced his personal views on a disputed issue of public policy (while also announcing that he would follow the law regardless of those views); (9) contacted and harassed supporters of his campaign opponent; (10) compared a female's pose to that "of a popular musician"; (11) announced that "he had lost faith in the court system"; (12) disparaged an Orange County Sheriff's deputy responding to Mr. Brown's report that his vehicle had been taken without his permission; (13) violated rules related to posting of campaign signs; and (14) caused an attorney's Facebook business page to be removed by flagging it.
>
> Mr. Brown then filed two motions seeking temporary restraining orders against the Bar. In the first, he requested that the Bar be restrained from proceeding on any allegations arising from Mr. Brown's alleged conduct in the judicial election and from filing any formal charges related to those matters because his statements were protected by the First Amendment. In the second, Mr. Brown sought to require the Bar and the grievance committee to allow him to appear in person to make a statement, as an accommodation because he is autistic….
>
> Rules 8 and 10 of the Federal Rules of Civil Procedure provide the basic pleading requirements. Under Rule 8, a pleading must contain the following:

> a. a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
> b. a short and plain statement of the claim showing that the pleader is entitled to relief; and
> c. a demand for the relief sought, which may include relief in the alternative or different types of relief.

The allegations must be simple, concise, and direct. Rule 10 requires that "[a] party must state its claims … in numbered paragraphs, each limited as far as practicable to a single set of circumstances." …

The First Amended Complaint clearly violates the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure. In its 870 paragraphs, 269 pages, and 63 causes of action, the First Amended Complaint includes the kind of extraordinary level of extraneous detail that necessitates repleader.

As one example, the First Amended Complaint alleges that his opposing counsel in a divorce case accused him of being on drugs at a deposition. Mr. Brown denies being on drugs, but "owns" that his tone was "dry and sarcastic." As another example, the First Amended Complaint describes three comic books written and published by Mr. Brown, including one in which Mr. Brown "assists Santa Claus in complying with international flight regulations" and Mr. Brown "and his dog help people resolve disputes."

As yet another example, the First Amended Complaint includes considerable detail about an event where Mr. Brown found himself as the passenger in his own car with an intoxicated driver who "had been physically violent" toward Mr. Brown in the past, when Mr. Brown had not given the driver permission to drive his car. Mr. Brown alleges that he "had recently learned that [the man] had a prior conviction for deliberately running a man over with a car," so Mr. Brown "induced the person to stop at a convenience store by telling him that [Mr. Brown] would go inside and buy him a beer" even though Mr. Brown "had no intention of buying a beer." He explains that he never actually intended to buy the intoxicated driver of his vehicle a beer, but the offer was a "pretext to summon law enforcement" because Mr. Brown was afraid of the driver, yet his phone was dead, so he needed to ask the cashier for a phone.

He then explains that, when deputies arrived, the driver told them that Mr. Brown "was crazy and violent toward him" but "[n]either statement was true." When the deputies began to question Mr. Brown, Mr. Brown alleges that he called the responding deputies "pigs—deliberately, and not casually—to make unmistakable that [Mr. Brown] was serious, and that [Mr. Brown] would not hesitate to hold the deputies legally accountable for a wrongful arrest."

In sum, the First Amended Complaint is excessively long, unnecessarily detailed, and contains countless immaterial facts that are not obviously connected to any particular cause of action. Trial courts within the Eleventh Circuit are instructed to intervene and demand repleader when a pleading contains those defects. Mr. Brown's request for expedited relief only underscores the propriety of that course of action.

Because the First Amended Complaint is dismissed, Mr. Brown's requests for temporary restraining orders and preliminary injunctive relief must also be denied.…

***NEXT:*** **Free Speech Unmuted: Can AI Libel You? The Robby Starbuck Case**

**EUGENE VOLOKH** is the Thomas M. Siebel Senior Fellow at the Hoover Institution at Stanford, and the Gary T. Schwartz Distinguished Professor of Law Emeritus and Distinguished Research Professor at UCLA School of Law. Naturally, his posts here (like the opinions of the other bloggers) are his own, and not endorsed by any institution. He is also the co-host of the *Free Speech Unmuted* podcast.

FREE SPEECH CIVIL PROCEDURE

Add Reason to Google MEDIA CONTACT & REPRINT REQUESTS

Show Comments (4)

## RECOMMENDED

North Carolina court bars woman from sharing video of cop shooting her dogs

J.D. Vance accidentally comes out as a socialist

[New York is fining Amish schools over vaccines, so the Amish are asking SCOTUS for help]

[Minnesota parents were censored for saying school employees' job titles]

[Why anti-government rebel Ammon Bundy turned against MAGA]

About

Browse Topics

Events

Staff

Jobs

Donate

Advertise

Subscribe

Contact

Media

Amazon

Add Reason to Google

© 2026 Reason Foundation | Accessibility | Privacy Policy | Terms Of Use

This site is protected by reCAPTCHA and the Google **Privacy Policy** and **Terms of Service** apply.